**David CRUZ**

v.

**WAUSAU INSURANCE et al.**

**No. 2004–65–Appeal.**

Supreme Court of Rhode Island.

Feb. 8, 2005.

Bennett J. Bergman, Pawtucket, for Plaintiff.

Gary J. Mena, Brockton, MA, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## O P I N I O N

PER CURIAM.

The plaintiff, David Cruz, appeals from the Superior Court's denial of his petition for declaratory relief. He maintains that the doctrines of collateral estoppel and res judicata support his position in the declaratory judgment action and that the hearing justice erred as a matter of law when he declined to grant declaratory relief.

The defendants, Wausau Insurance Company and Liberty Mutual Insurance Company, challenge the position taken by Cruz; they maintain that the grant or denial of declaratory relief is a discretionary decision and that the hearing justice did not abuse that discretion when he denied the petition for declaratory relief.

The underlying controversy arises out of an automobile collision that occurred on April 28, 2000, between vehicles operated by Cruz and by an individual named Stephen Woodruff. At the time of the collision, plaintiff was operating a vehicle belonging to his employer, Kelly and Picerne. Upon examination of plaintiff after the collision, it was discovered that he previously had been suffering from a preexisting asymptomatic brain tumor (referred to as a "medulloblastoma") and that the tumor has since become symptomatic. As a result, plaintiff has become unemployable and requires continuing medical treatment.

Cruz's employer, Kelly and Picerne, carried both automobile insurance and workers' compensation insurance. The automobile insurance policy had an uninsured/underinsured motorist coverage provision in the amount of one million dollars.[1] The plaintiff filed claims for benefits pursuant to both the Workers' Compensation Act and the underinsured motorist coverage section of the automobile insurance policy.

The Workers' Compensation Court conducted hearings and issued a decision on October 2, 2003. In its decision, the Workers' Compensation Court stated:

"[I]t is the opinion of the Court that the motor vehicle accident of April 28, 2000 aggravated the [plaintiff's] preexisting medulloblastoma causing it to become symptomatic and ultimately causing the [plaintiff] to become disabled."

---

1. Stephen Woodruff's vehicle was insured by Allstate Insurance. Allstate settled with plaintiff by paying him the $25,000 policy limit.

In its findings of fact, the Workers' Compensation Court found that Cruz's injury arose "out of and in the course of the [plaintiff's] employment, connected therewith and referable thereto, of which the employer had notice." It then concluded that plaintiff was entitled to collect workers' compensation benefits and other payments and reimbursements. No appeal was taken from the decision of the Workers' Compensation Court.

The claim for underinsured motorist benefits was referred to an arbitration panel. The arbitration hearings commenced on July 9, 2003, but the panel has not yet made an award.

It is undisputed that, at the time of the collision, Cruz was acting within the scope of his employment. The central issue to be resolved by the Workers' Compensation Court was whether he was entitled to workers' compensation benefits. To make such a determination, the Workers' Compensation Court simply had to determine (1) whether plaintiff was incapacitated as a result of his injury; and (2) whether there was a causal relationship between plaintiff's employment and his injury. *See Mulcahey v. New England Newspapers, Inc.*, 488 A.2d 681, 684 (R.I.1985).

By contrast, before plaintiff may be awarded damages pursuant to the underinsured motorist coverage section of his employer's automobile insurance policy, the arbitration panel will have to determine the liability (if any) of the alleged tortfeasor, Woodruff. To do so, the arbitration panel must conclude that plaintiff's injuries were proximately caused by the collision; he must prove to the arbitration panel that *but for* the negligence of the alleged tort-

feasor, the plaintiff's injury would not have occurred. *See Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 288 (R.I.1999). Even a cursory comparison of these two causation standards reveals that the causal relationship standard "is less exacting than what is required for proximate cause." *Tavares v. Aramark Corp.*, 841 A.2d 1124, 1128 (R.I.2004).

On October 22, 2003, plaintiff filed the instant declaratory judgment action pursuant to the Uniform Declaratory Judgments Act, G.L. 1956 chapter 30 of title 9, asking the Superior Court to declare that the arbitration panel[2] dealing with the underinsured motorist claim should be bound by the factual findings of the Workers' Compensation Court pursuant to the doctrines of collateral estoppel and res judicata.[3] Specifically, plaintiff, in his complaint, requested the Superior Court to require the arbitration panel to accept as factual the following proposition:

> "that the collision of April 28, 2000, aggravated the plaintiff's pre-existing medulloblastoma *causing it to become symptomatic and ultimately causing [him] to become disabled.*" (Emphasis added.)

On December 9, 2003, after hearing the arguments of the parties, the Superior Court denied plaintiff's petition for declaratory relief. At that time, the hearing justice stated that he was "not convinced that the same standard, same quantum of proof, same analysis that would take place in a workers comp matter are in a general tort matter." Also, and significantly, the hearing justice indicated that he was hesitant about interfering with a matter in arbitration immediately before the arbitra-

---

**2.** The three attorneys who constituted the arbitration panel were among the named defendants in the declaratory judgment action.

**3.** Although it appears that, at the time that plaintiff commenced his Superior Court de-

claratory judgment action, the arbitration panel had concluded its hearings, the decision of the arbitration panel was held in abeyance pending the outcome of the declaratory judgment action and this appeal.

tion panel issued its decision, particularly given the fact that plaintiff would be able to explore "other avenues * * * should the result of the arbitration not be satisfactory to [him]."

On December 15, 2003, the motion justice signed an order *nunc pro tunc* memorializing his denial of plaintiff's petition for declaratory relief. After his petition was denied, plaintiff timely appealed to this Court.

This matter came before the Supreme Court for oral argument on October 6, 2004, pursuant to an order directing the parties to appear and show cause why the issue raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should not be summarily decided.

■ The Uniform Declaratory Judgments Act confers broad discretion upon the trial justice as to whether he or she should grant declaratory relief. *See Employers' Fire Insurance Co. v. Beals*, 103 R.I. 623, 628, 240 A.2d 397, 401 (1968) ("[E]ven if the complaint contains a set of facts which bring it within the scope of our declaratory judgments act, there is no duty imposed thereby on the court to grant such relief, but rather the court is free to decide in the exercise of its discretion whether or not to award the relief asked for.").[4]

■ After reviewing the entire record, we are convinced that the motion justice certainly did not abuse his discretion in denying declaratory relief in the context of this case. Without wishing to speak in absolute terms when the case before us does not require us to do so, we find it difficult to conceive of a situation in which a declaratory judgment should be issued while another proceeding (whether an arbitration or traditional litigation) is in its advanced stages, as was the case in this instance.[5] Our general tendency (like that of most American courts)[6] has long been to require parties to stay on the dispute-resolution path for which they originally opted until they reach the end of that path. *See, e.g., Berberian v. Travisono*, 114 R.I. 269, 273, 332 A.2d 121, 123–24 (1975) (hold-

4. *See also Lombardi v. Goodyear Loan Co.*, 549 A.2d 1025, 1027 (R.I.1988); *Berberian v. Travisono*, 114 R.I. 269, 273, 332 A.2d 121, 123 (1975) ("[G.L. 1956 § ] 9–30–1 vests the Superior Court with power to grant declaratory relief, but the exercise of that power is discretionary."). *See generally* 10B Charles Alan Wright, et al., Federal Practice and Procedure: Civil 3d § 2759 at 540 (1998 & Supp. 2004).

5. Although this case may not be of the type to which the rules concerning the election of remedies strictly speaking apply, the jurisprudential policies underlying the election of remedies doctrine are by no means irrelevant to our belief that declaratory relief ordinarily should not be granted when adverse parties already have proceeded reasonably far down another dispute-resolution path. *See Martone v. Johnston School Committee*, 824 A.2d 426, 429–31 (R.I.2003) (discussing the election of remedies doctrine); *see also School Commit-*

tee *of North Kingstown v. Crouch*, 808 A.2d 1074, 1080 (R.I.2002); *Cipolla v. Rhode Island College, Board of Governors for Higher Education*, 742 A.2d 277, 281 (R.I.1999); *City of Pawtucket v. Pawtucket Lodge No. 4, Fraternal Order of Police*, 545 A.2d 499, 502–03 (R.I.1988).

6. *See generally Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937); *State Farm Fire and Casualty Co. v. Poomaihealani*, 667 F.Supp. 705, 707 (D.Haw.1987); *New York Guardian Mortgagee Corp. v. Cleland*, 473 F.Supp. 409, 418 (S.D.N.Y.1979); *Redmond v. Matthies*, 149 Conn. 423, 180 A.2d 639, 642 (1962); *Eastern Fine Paper, Inc. v. Garriga Trading Co.*, 457 A.2d 1111, 1113 (Me.1983); *Polakoff v. Hampton*, 148 Md.App. 13, 810 A.2d 1029, 1037 (Spec.App.2002); *Jacoby v. Babcock Artificial Kidney Center, Inc.*, 364 Mass. 561, 307 N.E.2d 2, 4–5 (1974); *State Farm Fire and Casualty Co. v. Joslyn*, 99

ing that the mere existence of alternate forms of relief does not preclude a party from seeking declaratory relief, but also indicating that one of the factors that are to be considered in deciding whether to grant declaratory relief is "the fact that there is pending, at the time of the commencement of the declaratory action, another action or proceeding which involves the same parties and in which may be adjudicated the same identical issues that are involved in the declaratory action"); *see also Buchman v. Taylor*, 151 Conn. 209, 196 A.2d 111, 112 (1963) ("Ordinarily, a declaratory judgment action will not be entertained if there is another action pending between the same parties in which the same issues are involved and may be adjudicated."); *cf. Cranston Teachers' Association v. Cranston School Committee*, 423 A.2d 69, 71 (R.I.1980) (applying election of remedies principles and holding that when a party had sought to invoke the grievance procedures of a collective bargaining agreement, it was "foreclosed from seeking redress in the Superior Court" in the form of a declaratory judgment). We continue to believe that these prudential principles are sound.

Accordingly, we have no hesitation about holding that there was no abuse of discretion in the instant denial of declaratory relief. It is clear that the motion justice was mindful of these policy considerations, and he certainly did not abuse his discretion in denying declaratory relief in this case.

For the foregoing reasons, we affirm the order of the Superior Court, to which we return the record in this case.

Justice SUTTELL did not participate.

A.D.2d 631, 472 N.Y.S.2d 200, 201 (N.Y.App. Div.1984).