DECISION
This case is before the Court on the request of several retired teachers for a declaration, adjudging the Pawtucket School Department's attempt to impose a health insurance premium co-payment[1] to be a breach of the collective bargaining agreements in effect when each Plaintiff retired. For the reasons set forth below, the Court grants Plaintiffs' request in part and denies it in part. *Page 2 
 FACTS
The Plaintiffs ("Retirees") are sixteen retired non-teaching employees of the Pawtucket School Department. During their years of employment, Retirees were members of Rhode Island Council 94, AFSCME, AFL-CIO, Local 1352 ("Council 94"). All retired between 1999 and 2007 after at least fifteen years of service. At the time of each retirement, various collective bargaining agreements ("CBA") between Council 94 and the Pawtucket School Committee were in effect. CBA Article 19.5, the provision governing retiree health insurance benefits, is the same in each of the CBAs between Council 94 and the Pawtucket School Committee from 1996 through the present. Article 19.5 states:
 "[u]pon retirement, an employee who has reached the age of fifty-eight (58) years or more, and has been a member of the Pawtucket School Department staff fifteen (15) years or more shall receive Family coverage under Blue Cross/Blue Shield and Delta Dental plans. This benefit shall extend until the retired employee is eligible for coverage under Medicare." (Pl.'s Ex. B — excerpts of CBAs from 1996 until present.)
Prior to August 2007, all Retirees received fully-paid health benefits until Medicare eligibility. Active employees also received fully-paid health insurance benefits.
Pursuant to the Municipal Employees' Arbitration Act, specifically G.L. 1956 § 28-9.4-10, an interest arbitrator issued a new CBA between Council 94 and the Pawtucket School Committee in August 2007 with validity dates of July 1, 2007 through June 30, 2010. As they previously had left service, Retirees were not parties to the negotiations or the interest arbitration. The arbitrator did not change Article 19.5 of the CBA, but did decree that current employees would be expected to pay a portion of their health insurance premiums going forward. Shortly after the arbitrator issued the new CBA, the Pawtucket School Department billed Retirees for the cost of a health insurance premium co-payment. Some Retirees paid the co-2 *Page 3 
payment as requested. All Retirees in this case had retired prior to the expiration of the 2006-2007 CBA.
 TRAVEL AND EVIDENCE
Retirees filed the instant action for declaratory judgment and breach of contract on November 12, 2008. Only the declaratory judgment count of the complaint is before the Court at this time. The count requests a judgment declaring that:
 "Retirees are entitled to 100% city-paid retiree health coverage pursuant to the applicable collective bargaining agreements until [Retirees are] Medicare eligible[,] . . . that the Defendants have breached the applicable collective bargaining agreements[,] . . . [and that] Defendants must reimburse Retirees for any co-share paid since August 2007." (Complaint, ¶ 35).
All parties submitted memoranda and exhibits to support their respective positions on the declaratory judgment issue.[2]
In August 2009, the Defendants moved to dismiss Count II of the complaint (the breach of contract action). This Court denied Defendants' motion on February 1, 2010. On that date, the Court ordered that any additional memoranda or requests to submit evidence be sent to the *Page 4 
Court within seven days (i.e., by February 8, 2010) or the declaratory judgment action would be deemed submitted. Neither party submitted further documentation to the Court. .
 ANALYSIS
Pursuant to G. L. 1956 § 9-30-1, the Uniform Declaratory Judgment Act, the Superior Court has the "power to declare rights, status and other legal relations." The object of the Act is "to allow the trial justice to facilitate the termination of controversies."Bradford Associates v. R.I. Division of Purchases,772 A.2d 485, 489 (R.I. 2001).
 Vesting of Retiree Health Insurance Benefits
The threshold issue is whether the Retirees' rights to health insurance benefits have vested so as to prevent the Defendants from changing or terminating those rights.
Our State Supreme Court's decision in Arena v. City ofProvidence, 919 A.2d 379 (R.I. 2007) is instructive for determining the breadth of the Retirees retained rights. InArena, firefighters retired while a City ordinance granting retirees a five percent compounded cost of living adjustment ("COLA") was in effect. 919 A.2d at 392. After the firefighters retired, the City passed new ordinances that reduced the COLA to three percent Id. at 383-84. The City applied the change in COLA benefit to firefighters who had retired prior to enactment of the new three percent ordinances. Id. In concluding that the retirees were entitled to the benefits promised by the ordinance in effect at their retirements, the Arena Court examined three considerations: (1) "the nature of the COLA benefit itself"; (2) the specific language of the *Page 5 
ordinance; and (3) the body of federal case law pertaining to similar questions in the collective bargaining context.Id. at 392-95.
The Arena Court "scrutinize[d] the nature of the COLA benefit itself" to determine whether and when the retirees' rights had vested. Id. at 392. Generally, jurisdictions classify pension benefits as contractual, as a form of deferred compensation, or as a gratuity. Id. Whereas "[p]urely contractual pension rights . . . vest immediately once the employment contract is signed and employment begins[,] . . . benefits that are deemed deferred compensation vest when the employee completes his or her years of eligibility" for the particular retirement benefit. Id.
Following the rule formulated by In re Almeida,611 A.2d 1375, 1386 (R.I. 1992), the Arena Court opted for a "middle-ground position composed of elements of both the contractual and deferred compensation theories" and held that "`[t]he right to deferred compensation vests upon meeting the terms of employment, but that vesting is subject to divestment because it is conditioned on continued honorable and faithful service.' Therefore, in Rhode Island, pension benefits vest once an employee honorably and faithfully meets the applicable pension statute's requirements."Id. at 393 (quoting In re Almeida, 611 A.2d at 1386) (alterations in original).
Arena considered the specific language of the ordinance to be vital to determining the nature of the retirees' benefits.Id. at 393. Lastly, the Arena Court examined federal case law concerning the vesting of COLA pension benefits in the collective bargaining context. Various jurisdictions have adopted a hybrid of contractual and deferred compensation theories to view COLA benefits as vested as of the date of retirement.Id. at 394-95 (discussing Shaw v. International Associationof Machinists and Aerospace Workers Pension Plan,750 F.2d 1458, 1466 (9th Cir. 1985) and Howell v. Anne ArundelCounty, 14 F.Supp.2d 752, 754 (D.Md. 1998)). Arena noted that in a collective bargaining context, retirees' expectations that they will *Page 6 
receive retirement benefits for which they negotiated weighs in favor of interpreting rights to retirement benefits as vesting as of the time of retirement. Id. at 395 (discussing Board ofTrustees of the Sheet Metal Workers' National Pension Fund v.Commissioner of Internal Revenue,318 F.3d 599, 604-05 (4th Cir. 2003)).
Following the reasoning in Arena, this Court holds that Retirees' rights to health insurance coverage vested under the CBAs in effect at the time of each individual's retirement. First, the Retirees, through their then representative, negotiated for the retiree health insurance benefits promised in Article 19.5 of the CBAs, and labored under the expectation that they would receive the promised benefit after retirement. See Arena,919 A.2d at 395. The plain language of Article 19.5 — that health and dental insurance "shall extend until the retired employee is eligible under Medicare" — indicates that the parties to the CBA intended for the right to last until a set end-date (e.g., the date on which each retiree becomes eligible for Medicare coverage.) Nothing about the excerpts of the CBAs indicates that the retiree health insurance coverage promised in Article 19.5 was meant to be merely gratuitous, "`springing from the appreciation and graciousness of the'" School Department.See Arena, 919 A.2d at 392 (quoting Haverstock v.State Public Employees Retirement Fund,490 N.E.2d 357, 361 (Ind. Ct. App. 1986)). Retirees "honorably and faithfully [met] the applicable" CBAs' requirements for the retirement benefit by retiring after reaching the age of 58 and having been employed for fifteen years. SeeArena at 393.
Although Arena pertained to retirement benefits that vested under an ordinance, not a CBA, Arena's holding is equally applicable to cases involving vested contractual rights. TheArena decision is not limited to situations in which retirement benefits are created by ordinance. Further, theArena holding that the specific language of the ordinance is significant in *Page 7 
determining whether rights vested, is consistent with the rule that one must apply traditional principles of contract interpretation to determine whether the parties intended contract rights to vest. Winnett v. Caterpillar, Inc.,553 F.3d 1000, 1008 (6th Cir. 2009); Senior v. NSTAR Electric andGas Corp., 449 F.3d 206, 216 (1st Cir. 2006); UAW v.Yard-Man, 716 F.2d 1476, 1479 (6th Cir. 1983). Under traditional principles of contract interpretation, the language of Article 19.5 of the CBAs, that the "benefit shall extend until the retired employee is eligible for coverage under Medicare", demonstrates the parties' intent to have the Retirees' rights vest at the time of retirement. See Pl's Ex. B. The word "shall" generally connotes something compulsory. Castelli v.Carcieri,961 A.2d 277, 284 (2008) (in context of statutory construction). Hence, the parties' intent for Retirees' rights to health insurance benefits to vest is clear.
Defendants argue that Retirees' rights regarding retiree health insurance benefits could not have vested under CBAs that have since expired because such a situation would contravene the Municipal Employees' Arbitration Act's prohibition on CBAs of more than three years in duration. See § 28-9.4-5 (stating that "no contract shall exceed the term of three (3) years"). The Court respectfully disagrees with Defendants' interpretation of § 28-9.4-5. It is both logical and well-settled that contractual rights andobligations can survive the expiration of the CBA from which they arise if the parties so intend. See Litton FinancialPrinting Division v. NLRB, 501 U.S. 190, 207-08 (1991) (observing that "[r]ights which accrued or vested under [an] agreement will, as a general rule, survive termination of the agreement");American Federation of State, County, and Municipal Employees,Local 2957 v. City of Benton, 513 F.3d 874, 883 (8th Cir. 2008) (holding that "[r]etiree health benefits will survive the expiration of a CBA if they vest before the agreement expired"); Coffin v.Bowater Incorporated, 501 F.3d 80, n. 15 (1st Cir. 2007) ("[a] retired worker's labor rights are governed by the CBA under which she retired . . ."); *Page 8 Yard-Man, 716 F.2d at 1479 (holding that contractual rights may extend beyond the expiration of the CBA if the parties so intend). Here, the parties manifested their intention for the obligations inhering in the CBAs to survive the expiration of the CBAs by setting an end-date for retiree health insurance benefits when the retirees become eligible for Medicare. Obviously, that event could occur after the expiration of the CBA.
Based on the foregoing analysis, the Court holds that each Plaintiff's rights to retiree health insurance benefits vested under the terms of the CBA in effect at the time of each individual's retirement. For example, a Plaintiff who retired on May 1, 2002 would be entitled to whatever benefits were promised in the CBA valid between July 1, 1999 and June 30, 2002.
 Contract Interpretation
The relief that Retirees have requested — specifically, a judgment declaring that "Retirees are entitled to 100% city-paid retiree health coverage pursuant to the applicable collective bargaining agreements until [Retirees are] Medicare eligible[,] . . . that the Defendants have breached the applicable collective bargaining agreements[,] . . . [and that] Defendants must reimburse Retirees for any co-share paid since August 2007" (Compl. ¶ 35) — would require the Court to examine and interpret the relevant CBAs to determine what benefits are promised and whether Defendants' conduct constitutes a breach of contract. Because so little evidence is before the Court, it declines to exercise its discretion to examine and interpret the CBAs and make a corresponding declaration of rights at this time. While the Court has the authority to issue declaratory judgments, it has no duty to do so. Cruz v. Wausau Insurance,866 A.2d 1237, 1240 (R.I. 2005). Obviously, the Court should be reluctant to grant declaratory judgment where *Page 9 
additional facts may distinguish the relevant rights. The Court should not cast a general rule on a group of individuals when the individual situations may be distinct.
Here, Defendants allege that the relevant CBAs are ambiguous. The Court hesitates to make a finding regarding ambiguity without first inspecting the CBAs in their entireties. Seeid. at 558 (quoting Mallane, 658 A.2d at 20). As noted above, neither party has offered complete copies of the relevant CBAs into evidence. The unavailability of the complete CBAs, the paucity of other evidence, and the fact that Retirees' breach of contract action leaves open an opportunity to develop the record further with regards to the meaning of the relevant CBAs all persuade the Court to wield its "power to declare rights, status, and other legal relations" with restraint. Section 9-30-1. Thus, the Court declines to issue a declaratory judgment with regards to whether the Pawtucket School Committee promised to provide fully-paid health insurance benefits to Retirees or whether the School Department has violated the CBAs.[3]
 CONCLUSION
For the reasons outlined above, the Court declares and adjudges that each Plaintiff's rights to retiree health insurance benefits vested under the terms of the CBA in effect at the time of his or her retirement. The Court declines to make a further declaration at this time.
[1] The Plaintiffs characterize the portion of the health and dental insurance premiums that the School Department wishes to shift to Plaintiffs as a "co-share." The 2007-2010 Collective Bargaining Agreement between Council 94 and the Pawtucket School Committee refers to this portion of health insurance costs as a "co-payment." For the sake of simplicity, the Court adopts the 2007-2010 Collective Bargaining Agreement's locution.
[2] Retirees' evidence included the State Labor Relations Board's certification of Council 94 (formerly Council 70) as the bargaining representative of the Pawtucket School Committee's non-teaching employees (Pl.'s Ex. A); excerpts from the CBAs between Council 94 and the Pawtucket School Committee in effect between 1996 and the present (Pl.'s Ex. B); an affidavit by Mr. Peckham, the Council 94 representative who negotiated the CBAs in effect from 1978 until present (Pl.'s Ex. C); the Pawtucket School Committee's proposals for the 2007 round of contract negotiations (Pl.'s Ex. D); the August 2007 interest arbitration award that led to the execution of the 2007-2010 CBA between Council 94 and the Pawtucket School Committee (Pl.'s Ex. E); and invoices for health and dental insurance co-payments addressed to Plaintiff Joan Calabro (Pl.'s Ex. F). Defendants submitted an affidavit by Mr. Conlon, the Pawtucket School Department's Business Administrator, to which a chart detailing the costs of Blue Cross/Blue Shield and Delta Dental plans is appended (Def.'s Ex. 1). Inexplicably, neither party submitted complete copies of the CBAs that were in effect at the time of each Retirees' retirement.
[3] Hopefully, the parties will be sufficiently guided by the findings of this Decision to resolve the remaining differences without Court intervention.