DECISION
This case is before the Court on the complaint of Deutsche Bank National Trust Company ("Deutsche Bank"). The complaint seeks a declaration that certain City of Providence's Ordinances are preempted by state and federal law. Deutsche Bank also seeks a writ of mandamus directing the City's Recorder of Deeds to record the foreclosure deeds presented by Deutsche Bank. For the reasons set forth below, the Court grants Deutsche Bank's request for declaratory relief with respect to certain portions of the Ordinances but denies its petition for a writ of mandamus.
 FACTS AND QUESTIONS PRESENTED
Over the past year, the City of Providence ("the City") enacted several ordinances to combat the current climate of increasing real estate foreclosures. Specifically, the City added sections 13-213 through 13-220 to its Code of Ordinances.[1]
These sections require a foreclosing *Page 2 
lender to provide the City and the borrower with written notice of its intent to foreclose and to participate in a conciliation conference with the borrower in an attempt to renegotiate the loan and avoid foreclosure. The Ordinances allowed fines to be imposed for the lender's failure to follow these procedures, and indicate that "[n]o deed offered by a lender/mortgagor to be filed with the recorder of deeds shall be accepted and/or recorded in the land evidence records of the city if it is determined that the lender/mortgagor has failed in any respect with the requirements and provisions of this article." Section 13-217.
The present dispute challenges the legality of these Ordinances. Deutsche Bank argues that they are preempted by state law because the Rhode Island General Assembly intended to occupy the entire field of mortgage foreclosure laws. Similarly, Deutsche Bank avers that — because the field of mortgage foreclosures is of statewide concern — the Ordinances deal with an impermissible category for municipal regulation. Notably, the City's Recorder of Deeds refused to accept a number of foreclosure deeds for recording based on noncompliance with the Ordinances.
Briefly, "[a] `mortgage' is a conveyance of title to property that is given as security for the payment of a debt." 54A Am.Jur. 2d Mortgages § 1 (2010). Mortgages typically confer upon upon the lender the power to sell the mortgaged property in the event of a default. See id. Notably, "[e]very conveyance of lands . . . by way of mortgage . . . shall be void unless . . . recorded in the records of land evidence in the town or city where the lands . . . are situated. . . ." G.L. 1956 § 34-11-1. "The general purpose of land-recording statutes is to provide a public record of transactions affecting title to land." In re Barnacle,623 A.2d 445, 447 (R.I. 1993). *Page 3 
 ANALYSIS
Pursuant to G.L. 1956 § 9-30-1, Rhode Island's enactment of the Uniform Declaratory Judgment Act, the Superior Court has the "power to declare rights, status, and other legal relations" upon petition.Town of Barrington v. Williams, 972 A.2d 603, 608 (R.I. 2009). While the Court has the authority to issue declaratory judgments, it has no duty to do so. Cruz v. Wausau Insurance,866 A.2d 1237, 1240 (R.I. 2005). For the following reasons, this Court declares that the portions of the Ordinances which prohibit the recording of certain deeds have been preempted by state law and cannot stand.
I. State Preemption
A city ordinance may be preempted in a number of ways. "First, a municipal ordinance is preempted if it conflicts with a state statute on the same subject." Town of Warren v.Thornton-Whitehouse, 740 A.2d 1255, 1261 (R.I. 1999) (citingState v. Pascale,86 R.I. 182, 186-87, 134 A.2d 149, 152 (1957)). "[A] municipal ordinance is [also] preempted if the Legislature intended that its statutory scheme completely occupy the field of regulation on a particular subject." Id. Notably, "Rhode Island, unlike some states, recognizes implied preemption and does not require a clear statement by the legislature of intention to preempt." RhodeIsland Cogeneration Associates v. City of East Providence,728 F. Supp. 828, 834, n. 12 (D.R.I. 1990) (citing Wood v.Peckham, 80 R.I. 479, 482, 98 A.2d 669, 670 (1953)). "[L]ocal legislation embodied in charter, ordinance or other regulation is pre-empted by statewide legislation `if it disrupts the state's overall scheme of regulation'" Munroe v. Townof East Greenwich, 733 A.2d 703, 710 (R.I. 1999) (quotingTown of East Greenwich v. O'Neil, 617 A.2d 104, 109 *Page 4 
(R.I. 1992)). When addressing implied preemption, the U.S. District Court for the District of Rhode Island summarized that an "[o]rdinance will be declared invalid if [it] inhibits the enforcement of the state's . . . laws, threatens to disrupt the state's overall scheme of regulation on [a certain] issue[], or, instead of filling a gap in the state's regulatory scheme, provides a different regulatory scheme." Rhode Island CogenerationAssociates, 728 F. Supp. at 834.
G.L. 1956 § 34-13-1 states:
 "Any of the following instruments shall be recorded or filed by the town clerk or recorder of deeds, in the manner prescribed by law, on request of any person and on payment of the lawful fees therefor:. . . .
 . . . .
 (7) All instruments required by statute to be recorded, including deeds, mortgages and transfers and discharges thereof, leases or memoranda thereof, and transfers and cancellations thereof, and the covenants, conditions, agreements and powers therein contained." (emphasis added.)
In contrast, the Providence Ordinances prohibit a lender from recording a foreclosure deed until the lender first satisfies the notice and loan conciliation conference requirements prior to the foreclosure sale. The Ordinances are invalid to the extent that they "disrupt[] the state's overall scheme" of regulating the transfer of real estate and specifically the recording of instruments.Munroe,733 A.2d at 710 (quoting O'Neil, 617 A.2d at 109). "[T]he Legislature has prescribed the duties of a recorder of deeds to record instruments and has specified what is required for a deed to be a legally sufficient instrument." Bionomic Church of RhodeIsland v. Gerardi, 414 A.2d 474, 476 (R.I. 1980). Our Courts have stated that "a recorder of deeds is a purely ministerial officer who, when presented with a deed executed in compliance withcontrolling statutes, must receive and record the instrument."Id. at 476 (citing Redelsperger v. Redelsperger,71 R.I. 203, 206-07, 43 A.2d 305, 306 (1945) (emphasis added)). *Page 5 
The General Assembly's use of mandatory rather than suggestive language in § 34-13-1 demonstrates the legislature's goal of occupying the entire field of the state's recording system. State law sets specific obligations indicative of preemptive intent. For example, the General Assembly directs the town clerk or recorder of deeds to write the exact date and time of receipt on the instrument and in a receiving book. See § 34-13-4. Other statutory sections indicate that each deed presented for recording must have the name and address of the grantee, and that mortgage deeds must have the name and address of the mortgagor and mortgagee.See §§ 34-11-1.1 — 1.3. Moreover, "each city and townwithin the state" must keep an alphabetical index of all recorded instruments. § 34-13-5 (emphasis added). The General Assembly established a uniform fee schedule to be followed by every city and town, and it has apportioned the distribution of those fees.See § 34-13-7. The state's statutory scheme even specifies the cost to be charged for photocopies of a record.See § 34-13-9. Notably, these fees and costs are set by state statute and are the same for each municipality. With such an expansive and comprehensive framework, this Court finds that the General Assembly intended to occupy the entire field of regulation with respect to the recording of instruments.
Allowing an array of recording systems across our small state would create conflicting obligations and confuse individuals who are attempting to comply. Ordinances such as the one at bar would "disrupt the state's overall scheme of regulation" by creating additional hurdles which must be overcome before a foreclosure deed can be recorded. Munroe, 733 A.2d at 710. "[I]nstead of filling a gap in the state's regulatory scheme," the City's Ordinances "provide[] a different regulatory scheme" which must be declared invalid. Rhode Island Cogeneration Associates,728 F. Supp. at 834. *Page 6 
II. Home Rule
"The dueling issues of local authority and state preeminence often intersect because home rule requires an analysis of whether the issue is of local or statewide concern, whereas preemption requires an analysis of whether the issue is implicitly reserved within the state's sole domain." Amico's Inc. v. Mattos,789 A.2d 899, 908 (R.I. 2002). According to Deutsche Bank, the Ordinances purport to govern an impermissible area for municipal regulation because the Home Rule Amendment to the Rhode Island Constitution prevents a city from enacting laws which attempt to legislate over a matter of statewide concern. (See Pl.'s mem. at 7.) The Ordinances at issue here were enacted in violation of the Home Rule Amendment to the Rhode Island Constitution. (R.I. Const. art. XIII, § 2.)
"The state constitution was amended in 1951 to grant home rule to the state's municipalities. . . . The home-rule amendment to the constitution . . . empower[ed] cities and towns to legislate with regard to all local matters." Viveiros v. Town ofMiddletown, 973 A.2d 607, 611 (R.I. 2009) (internal citations and quotation omitted). Under the Rhode Island Constitution, "[e]very city and town shall have the power at any time to adopt a charter, amend its charter, [and] enact and amend local laws . . . not inconsistent with this Constitution and laws enacted by the general assembly. . . ." (R.I. Const. art. XIII, § 2.) In other words, "[w]hen municipalities have adopted Home Rule Charters, those cities and towns are empowered to enact ordinances regulating all purely local matters." Hourihan v. Town of Middletown,723 A.2d 790, 791 (R.I. 1998) (citing O'Neil,617 A.2d at 111). However, "municipalities may not legislate on matters of statewide concern, and the power of home rule is subordinate to the General Assembly's unconditional power to legislate in the same areas." Amico's Inc.,789 A.2d at 903 (internal citations omitted). "It is declared to be a fundamental principle that municipal *Page 7 
ordinances are inferior in status and subordinate to the laws of the state." Rhode Island Cogeneration Associates,728 F. Supp. at 834 (citing Wood, 80 R.I. at 482, 98 A.2d at 670). "It is undisputed that a municipal ordinance in direct and material conflict with a state law of general character or statewide concern is invalid." Town of Glocester v. R. I. Solid WasteManagement Corp.,120 R.I. 606, 607, 390 A.2d 348, 349 (R.I. 1978).
When determining whether a city's ordinance improperly legislates on a statewide matter, our Courts examine three important variables.
 "First, when it appears that uniform regulation throughout the state is necessary or desirable, the matter is likely to be within the state's domain. Second, whether a particular matter is traditionally within the historical dominion of one entity is a substantial consideration. Third, and most critical, if the action of a municipality has a significant effect upon people outside the home rule town or city, the matter is apt to be deemed one of statewide concern." O'Neil, 617 A.2d at 111 (internal citations omitted).
Upon filtering the Ordinances through these considerations, this Court is convinced that the City's enactment impermissibly deals with a statewide matter. To begin, uniform statewide regulation over the recording of instruments is both necessary and desirable. "The general purpose of land-recording statutes is to provide a public record of transactions affecting title to land." In reBarnacle, 623 A.2d 445, 447 (R.I. 1993). Such statutes "provide protection to those diligent enough to conduct a search of the title records." Shappy v. Downcity Capital Partners,Ltd., 973 A.2d 40, 44 (R.I. 2009) (citing Domarad v.Fisher Burke, Inc.,270 Cal.App.2d 543, 76 Cal.Rptr. 529, 536 (1969)). "As it is indisputable that the general welfare of society is involved in the security of the titles to real estate and in the public registry of such titles, it is obvious that the power to legislate as to such subjects inheres in the very nature of government." American LandCo. v. Zeiss, 219 U.S. 47, 60 (1911). Because the land evidence records are so *Page 8 
heavily relied upon and govern such important expectations between parties, this Court finds it critically important that recording laws are uniform throughout the state.
The next consideration is "whether a particular matter is traditionally within the historical dominion of one entity."O'Neil, 617 A.2d at 111. Although recording acts were not part of the early common law of England, "[e]xperimental recording legislation was enacted in many of the Colonies before 1640."Powell on RealProperty, § 82.01[1][b] at 82-6 (Michael Allan Wolf ed. 2009). Afterwards, recording statutes were enacted by the states in order "[t]o help in the efficient and principled settlement of . . . new land." Id. at 82-7. "[T]he statutes of the colonies and early states exerted influence on the newly formed territories and states, so that the modern laws of most states follow . . . established patterns. . . .'" Id. at 82-6. This resulted "in general statutes for the recording of conveyances, and instruments affecting real property, in every state." 2 Alfred G. Reeves, A Treatise onthe Law of Real Property, § 1120 (1909).
"In this country, in all of the States, there are statutes which provide for the registration of conveyances affecting the title to real property." 2 Robert T. Devlin, Real Property andDeeds, § 628 (3rd ed. 1911). With just minimal research, this Court was able to find a Rhode Island recording statute dating back to 1857. This statute indicated that "[a]ll bargains, sales and other conveyances whatsoever of any lands . . . and all deeds of trust and mortgages whatsoever . . . shall be void unless they shall be acknowledged and recorded." G.L. 1857 § 146-3. These statutes — like the ones in existence today — even indicate that "[w]henever any deed . . . or other instrument . . . shall be presented to any town clerk for record, it shall be the duty of such town clerk immediately thereupon to cause to be entered . . . the day . . . the hour and minute, when the same was presented for record." G.L. 1857 § 146-4. Thus, this Court finds that recording *Page 9 
acts have traditionally been within domain of the state. In Rhode Island, this factor weighs in favor of finding that recording requirements are a matter of statewide concern.
Finally, this Court must consider whether the Ordinances have "a significant effect upon people outside the" City. O'Neil,617 A.2d at 111. As previously discussed, the General Assembly has provided a uniform and detailed framework regulating the recording of instruments. If each city and town were permitted to implement its own nuances, a comprehensive approach would be impossible. In this day of intercity commerce and expanding information technology, one city's recording scheme necessarily affects the businesses and residents of other communities. Allowing towns and municipalities to enact their own recording laws would create conflicting and idiosyncratic obligations that might confuse individuals who seek to adhere to the accepted requirements. It is therefore undeniable that the Ordinances currently have a significant effect on those outside the City. Thus, this Court finds that the laws governing the recording of instruments are of statewide concern. As such, it was impermissible for the City to force a party to meet new requirements before a foreclosure deed can be recorded in the City's Land Evidence Records. Such an enactment is a violation of the Home Rule Amendment.
III. Extension of the Foreclosure Timeline
Deutsche Bank argues that the timeline set forth by the Ordinances renders the entire City's scheme inconsistent with controlling state law. According to Deutsche Bank, compliance with G.L. § 34-27-1, et seq. and § 34-13-1, et seq. allows the entire foreclosure process to be completed in a total of fifty-two days. On the other hand, the conciliation process set forth in the *Page 10 
Ordinance can last a total of sixty days. Accordingly, Deutsch Bank avers that it is "impossible to fully comply with both simultaneously." (Pl.'s Sec. Mem. at 3, n. 2.)
Rhode Island's statutory scheme requires the mortgagee to give notice of the foreclosure sale by publication in a public newspaper for three consecutive weeks. See G.L. § 34-27-4(a). "[T]he first publication of the notice shall be at least
twenty-one (21) days before the day of sale."Id. (emphasis added). Moreover, "[t]he sale may take place no more than fourteen (14) days from the date on which the third successive notice is published." Id. Additionally, the mortgagee must have mailed written notice of the time and place of sale to an individual consumer mortgagor "at least
thirty (30) days . . . prior to the first publication. . . ." G.L. § 34-27-4(b).
Conversely, section 13-216(4) of the Ordinances requires that a conciliation conference must be scheduled "not later than twenty-one (21) days following the mailing of the notice of intent to foreclose." If the homeowner is not responsive, or if the parties cannot come to an agreement at the conciliation conference, sections 13-216(8) through 13-216(10) of the Ordinances provide that their requirements will be deemed satisfied. Moreover, section 13-216(11) indicates that the parties "shall complete the process . . . within a period of sixty (60) days from the initial notice. . . ."
In interpreting a statute, the courts first look to the plain meaning of the language employed. "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Fleet National Bank v. Hunt,944 A.2d 846, 852 (R.I. 2008) (quoting Tinney v. Tinney,799 A.2d 235, 237 (R.I. 2002)). The plain language of the Rhode Island statutes at issue here do not provide a precise mandatory timeline for foreclosure. Instead, this Court finds that — through the *Page 11 
use of such language as "at least" and "no more than" — the statutory scheme creates a window of time in which certain actions can be taken. This window of time could reasonably be expanded to encompass the Ordinances' mandatory process which only lasts amaximum of sixty days. As such, Deutsche Bank's assertion that it is "impossible to fully comply with both [laws] simultaneously" is misplaced. Accordingly, this Court finds that the Ordinances' timeline does not interfere with the statutory foreclosure scheme and declines to render such a declaration.
IV. Federal Preemption
Deutsche Bank argues that the Ordinances are preempted by the Federal Fair Debt Collection Practices Act ("FDCPA"). On one hand, Section 13-216(1) of the Ordinances requires that "[t]he lender/mortgagee shall provide written notice to the city of its intent to foreclose on the subject residential property." Conversely, the FDCPA cautions that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C.A. § 1692c(b). Deutsche Bank avers these two provisions are in conflict, and that the FDCPA must control. It essentially argues that, by requiring lenders to provide the city with notice of intent to foreclose, the Ordinances force mortgagors to violate the FDCPA by communicating with a third party about the collection of a debt.
At the outset, it is worth noting that Deutsche Bank has provided this Court with an Affidavit of Compliance with the Ordinances. Therein, it avers that a "Notice of Intent to Foreclose was sent to the City of Providence at the same time as such notice was sent to the borrowers in accordance with" section 13-216 of the Ordinances. Deutsche Bank now asks this *Page 12 
Court to declare that the filing of such a notice is a violation of the FDCPA. Simply put, this issue is not currently in controversy in the case at bar. Deutsche Bank has already complied with this provision of the Ordinances.
The purportedly applicable portions of the FDCPA apply only to "debt collectors." If a lender is not considered a "debt collector" for purposes of the Act, the Ordinances will remain unaffected by federal preemption. See Verizon New England Inc. v. RhodeIsland Public Utilities Com'n, 822 A.2d 187, 193 (R.I. 2003) (Conflict preemption acts to invalidate a local law when "compliance with both federal and state regulations is a physical impossibility.")[2] This Court recognizes that there is a split of authority regarding whether an enforcer of a security interest can properly be considered a "debt collector" for the purposes of the entire FDCPA, or whether it is subject only to section 1692(f)(6).Compare Kee v. R-G Crown Bank, 656 F. Supp.2d 1348, 1354 *Page 13 
(D. Utah 2009) ("A non-judicial foreclosure is not the collection of a debt under the FDCPA."), and Warren v. Countrywide Home Loans,Inc., 342 Fed.Appx. 458, 460 (11th Cir. 2009) (accord),with Wilson v. Draper Goldberg, P.L.L.C.,443 F.3d 373, 376 (4th Cir. 2006) (indicating that foreclosing on a security interest is a collection of a debt), and Kaltenbach v.Richards, 464 F.3d 524, 526 (5th Cir. 2006) (accord).
"The Uniform Declaratory Judgments Act confers broad discretion upon the trial justice as to whether he or she should grant declaratory relief." Cruz v. Wausau Insurance,866 A.2d 1237, 1240 (R.I. 2005). "Even if the complaint contains a set of facts which bring it within the scope of our declaratory judgments act, there is no duty imposed thereby on the court to grant such relief, but rather the court is free to decide in the exercise of its discretion whether or not to award the relief asked for." Id. (quoting Employers' Fire InsuranceCo. v. Beals, 103 R.I. 623, 628, 240 A.2d 397, 401 (1968)). This Court is under no duty to issue a declaratory judgment. Deutsche Bank has already complied with the Ordinances' notice requirement, and it now essentially asks this Court to declare that it committed a violation of the FDCPA by doing so. The FDCPA's stated purpose is to "eliminate abusive debt collection practices by debt collectors," not to protect lenders. 15 U.S.C. § 1692(e). This Court has already declared that the City cannot prevent Deutsche Bank from recording a foreclosure deed based on any lack of compliance with the Ordinances. This, coupled with the split of authority over whether a mortgagee can be subject to the entire FDCPA, prompts the Court to refrain from exercising its authority to issue a declaratory judgment regarding any federal preemption issues. As such, the Court declines Deutsche Bank's request to issue a declaratory judgment declaring that the Ordinances are preempted by the FDCPA. *Page 14 
V. Severability
At oral argument, this Court expressed its concern that there was no severability clause, that is, if one section of the Ordinance failed, the entire statutory scheme may be invalidated.See Rhode Island Federation of Teachers, AFL-CIO v.Norberg, 630 F.2d 855, 863 (1st Cir. 1980) (indicating that even though the controlling factor is whether the legislature would have enacted the statute without the severed portion, a savings clause creates a presumption of severability). However, section 1-5 of the Providence Code of Ordinances declares that if any portion of the Code is found to be invalid, the remaining portions will not be affected.[3] Furthermore, courts have the "authority to declare and hold a portion of an ordinance invalid and yet to uphold the remaining sections of the ordinance if the valid portion is not indispensable and can be severed without destroying the real purpose for enactment." City of Providence v. Employee Retirement Boardof City of Providence, 749 A.2d 1088, 1099 (R.I. 2000). This Court is satisfied that the City's overall intention is to encourage foreclosing lenders to engage in conciliation with defaulting borrowers prior to actually foreclosing on any residential property within the city limits. Such a purpose is not destroyed by removing the portions of the Ordinances which purport to limit a party's ability to record a deed. As such, the remaining portions of the Ordinances are not invalidated by virtue of this Court's determination that the recording prohibition is unenforceable. *Page 15 
VI. Relief
This Court is mindful of the devastating foreclosure crisis which swept our nation. Certainly, a process through which parties are encouraged to conciliate prior to foreclosure is a desirable one. The conciliation procedure itself has not been shown to be either overly burdensome or time consuming. Rather, a bank would likely be able to conduct several such conferences in an afternoon over the phone. Despite the appeal of such a process, this Court declares that it cannot be enforced by denying the lender the ability to record a foreclosure deed in the land evidence records. For the reasons explained above, the portions of the Ordinances which limit a party's ability to record a deed are therefore void as contrary to state law.
Finally, this Court notes that "[a] writ of mandamus is an extreme remedy that will be issued only when: (1) the petitioner has a clear legal right to the relief sought, (2) the respondent has a ministerial duty to perform the requested act without discretion to refuse, and (3) the petitioner has no adequate remedy at law."New England Development, LLC v. Berg,913 A.2d 363, 368 (R.I. 2007) (citing Union Station Associates v.Rossi, 862 A.2d 185, 193 (R.I. 2004)). Because mandamus is an extraordinary remedy, "[o]nce these prerequisites have been shown, it is within the sound discretion of the Superior Court justice to ultimately issue the writ." Martone v. JohnstonSchool Committee, 824 A.2d 426 (R.I. 2003) (citing Wood v.Lussier, 416 A.2d 690, 693 (R.I. 1980)). In this case, the Court has already declared that the provisions of the Ordinances which attempt to prevent a party from recording a foreclosure deed are invalid. In light of this declaratory relief, foreclosure deeds may be presented to the City for recording without establishing compliance with the conciliation provision of the ordinances. The Court therefore declines Deutsche Bank's request for a writ of mandamus at this juncture. *Page 16 
 CONCLUSION
For the foregoing reasons, the Court finds that the provisions of the Ordinances which purport to prevent foreclosure deeds from being recorded are preempted by the state's statutory scheme. The Court grants Plaintiff's motion for issuance of a declaratory judgment to that extent, but declines to issue a writ of mandamus.
[1] Three separate legislative enactments were involved in this process. On July 27, 2009, the Providence City Council approved two ordinances entitled Chapter 2009-41 No. 340 and Chapter 2009-42 No. 341. These added sections 13-213 through 13-220 to the City's Code of Ordinances. Then, On January 26, 2010, Chapter 2010-2 No. 18 was approved. This amended sections 13-213 through 13-217 (collectively, the "Ordinances").
[2] Such a determination requires an examination of the FDCPA's definition of "debt collector." According to the statute
 "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . 15 U.S.C.A. § 1692a(6).
Specifically excluded from the definition of "debt collector" is
 any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor. 15 U.S.C.A. § 1692a(6)(F).
In certain circumstances though, the FDCPA expands upon the definition of "debt collector." For example, "[f]or the purpose of section 1692f(6) of this title such term also includes . . . the enforcement of security interests." § 1692a(6). Section 1692f describes a number of forbidden "unfair practices." Included in this description is the
 [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if —
 (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
 (B) there is no present intention to take possession of the property; or
 (C) the property is exempt by law from such dispossession or disablement. 15 U.S.C.A. § 1692f(6).
[3] Sec. 1-5. — Severability of parts of Code.
 It is hereby declared to be the intention of the city council that the sections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of the volume, since the same would have been enacted by the city council without the incorporation in this Code of any such unconstitutional phrase, clause, sentence, paragraph or section."